UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AUTOTEL,<br><br>  Plaintiff,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>  Defendant. | Case No. 2:12-cv-00164-APG-VCF<br><br>**ORDER DENYING MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD** |

## I. BACKGROUND

This action arises out of a lengthy adjudicative process within the Department of Interior. On April 4, 2003, Autotel submitted a development application to the Bureau of Land Management ("BLM") to build a "communications site" on Frenchman mountain (better known as Sunrise Mountain) outside of Las Vegas. (AR 68.)[1] Autotel sought to build (i) a 12-foot by 20-foot metal building; (ii) an 80-foot tall self-supporting tower; and (iii) a generator and propane tank (collectively, the "Project). (*Id.*) After BLM pointed out several deficiencies in the application, Autotel submitted an amended application on August 19, 2003.

The land on which Autotel seeks to build the Project (the "Project Site") was designated an "Instant Study Area" ("ISA") in 1976 under the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1787. ISAs are lands subject to review and designation as wilderness areas under FLPMA section 603(a), 43 U.S.C. § 1782(a). During the pendency of this

---

[1] "AR" abbreviates "Administrative Record."

review, BLM must manage these lands "so as not to *impair* the suitability of such areas for preservation as wilderness." 43 U.S.C. § 1782(c) (emphasis added). BLM does this by following its Interim Management Policy for Lands Under Wilderness Review, (the "IMP").[2] Under the IMP, development in ISAs must meet certain "nonimpairment" guidelines that require projects to be temporary, constructed without disturbing the land, and capable of deconstruction in a timely and non-disturbing manner should the land become designated as a wilderness area. Specifically, the Project Site is within the Sunrise ISA. In addition, BLM has asserted that the Project Site is within the Rainbow Gardens Area of Critical Environmental Concern ("Rainbow Gardens ACEC"). (AR 5, 24.)

On January 12, 2007, BLM rejected Autotel's application. BLM first reasoned that the Project was not temporary in nature and that construction would newly disturb the soil. (AR 25.) Next, BLM stated that the August 19, 2003 application was incomplete and that "[r]egulations pertaining to the Sunrise ISA and the ACEC designation in the Resource Management Plan preclude[] the authorization of a communications use facility (site type right-of-way)." (*Id.*)

Autotel then appealed to the Interior Board of Land Appeals (the "IBLA"). In its Statement of Reasons, Autotel asserted, among other things, that BLM had approved various other communication facilities on Sunrise Mountain, that Autotel had discussed these other approvals with "Reality [*sic*] Specialist Mark Chandler prior to submitting the application," and that Mr. Chandler "was unable to explain why an application from Autotel would be treated any differently than [] those from others." (AR 18.) Although Autotel raised this point in the "Autotel's application" section of its Statement of Reasons rather than the "Provisions of the decision Autotel challenges" section, this appears to be the first time that Autotel argued (by implication) that BLM may have treated it differently than other similarly situated permit applicants. (*See* AR 18–19.)

---

[2] BLM Manual H-8550-1. The Court takes judicial notice that BLM Manual H-8550-1 was superseded on July 13, 2012 by BLM Manual 6330 (http://www.blm.gov/pgdata/etc/medialib/blm/wo/Information_Resources_Management/policy/blm_manual.Par.31915.File.dat/6330.pdf).

2

On February 1, 2008, the IBLA affirmed BLM's decision. (AR 3.) The IBLA disagreed with Autotel's theory that confining the Project to already-disturbed land would evade the IMP's prohibition on new surface disturbance and disagreed that the Project would be temporary. (AR 6.) The IBLA held that Autotel did not demonstrate by a preponderance of the evidence that "BLM's decision to prohibit a new surface disturbance and reject the ROW application lacked a rational basis." (*Id.*)

On February 1, 2012, Autotel filed a complaint in this Court against BLM under 5 U.S.C. § 702—the judicial review provision of the Administrative Procedure Act ("APA"). Autotel claims that BLM violated the FLPMA and its implementing regulations, 43 C.F.R. §§ 1600–9260, by arbitrarily and capriciously denying Autotel's application to build a communications facility. Autotel argues that (i) the IMP is not a binding regulation; (ii) BLM imposed an overly-restrictive interpretation of the term "temporary;" (iii) its proposal falls within the relevant guidelines; (iv) its application meets the applicable nonimpairment criteria; and (v) its proposed use is within the scope of uses already permitted by BLM in "this already-disturbed area" on Sunrise Mountain. (Dkt. No. 1 at 5–6.) Autotel again raised the conversation with "BLM Reality [*sic*] Specialist Mark Chandler," who Autotel alleges told it that "it was unlikely that BLM would approve a tower for Autotel but gave no explanation as to why Autotel would be treated differently from the other users of the area." (*Id.* at 4.) The Court understands Autotel to argue that BLM treated Autotel differently than other similarly situated entities.

On February 19, 2012, BLM answered the Complaint, denying the allegations that its decision was arbitrary and capricious. (Dkt. No. 11.) That same day, BLM manually filed what it designated as the Administrative Record and electronically filed a notice of the manual filing. (Dkt. No. 12.)[3]

---

[3] In relevant part, the Administrative Record comprises:
1. IBLA order rejecting Autotel's appeal (Feb. 1, 2008). (AR 3–7.)
2. BLM's response to Autotel's Statement of Reasons (Apr. 5, 2007). (AR 11–15.)
3. Autotel's Statement of Reasons, re: appeal to IBLA (Feb. 27, 2007). (AR 18–20.)
4. Autotel's Notice of Appeal (Feb. 5, 2007). (AR 23.)
5. BLM rejection of Autotel's application (Jan. 12, 2007). (AR 24–26.)

On January 1, 2013, the parties jointly submitted a status report. (Dkt. No. 16.) In relevant part, they agreed that this Court's review is limited to the Administrative Record (subject to various potential exceptions) and that, as an APA matter, this case will be decided on cross-motions for summary judgment. (*Id.* at 2.) The parties have not yet moved for summary judgment, however, because on January 2, 2013, Autotel moved to supplement the Administrative Record. (Dkt. No. 17, the "Motion.") BLM responded on January 15 (Dkt. No. 18) and Autotel did not reply. Whether to allow Autotel to supplement the Administrative Record is the only issue presently before the Court.

## II.  ANALYSIS

Except in limited instances, the Ninth Circuit disfavors supplementing an administrative record.

> Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision. . . . We allow expansion of the administrative record in four *narrowly construed* circumstances: (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency.

---

6.  Autotel's amended application with revised tower and building layout (August 14, 2003; received by BLM on August 19, 2003). (AR 27–29.)
7.  BLM Interim Mgmt. Policy for Lands Under Wilderness Review ("IMP"), pp. 29–30. (AR 30–32.)
8.  FLPMA § 603(a) (43 U.S.C. § 1782(a)). (AR 33–34.)
9.  BLM information sheet for taking appeals to the IBLA. (AR 35.)
10. BLM letter informing Autotel that its application is incomplete under 43 CFR § 2804.12 (Jan. 10, 2007). (AR 36.)
11. "Refund Report, Current to 12-12-06." (AR 37–50.)
12. BLM letter rejecting Autotel's April 4, 2003 application (July 10, 2003). (AR 55–56.)
13. Master Title PLAT. (AR 59–61.)
14. BLM geographic report with land, sorted by serial number. (AR 62–64.)
15. BLM case recordation, (MASS) serial register page. (AR 65–67.)
16. Autotel's "Application for Transportation and Utility Systems and Facilities on Federal Land (April 4, 2003). (AR 68–77.)
17. BLM receipt of Autotel's application (April 7, 2003). (AR 78–79.)

*Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (citations omitted) (emphasis added). "These limited exceptions operate to identify and plug holes in the administrative record." *Id.*

Although courts presume that agencies prepare an accurate administrative record, "[t]he agency may not . . . *skew* the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Envt'l Defense Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978) (emphasis added). However, "[a]n agency does not 'skew' the administrative record when it does not include agency documents that were not used in making its decision but were available to commenters." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010).

"The party challenging the adequacy of the administrative record . . . has the burden of showing that supplementation is warranted." *U.S. v. Dept. of Transp.*, 450 F. Supp. 2d 1207, 1213 (W.D. Wash. 2006). Autotel thus has the "heavy burden" of showing that one of the four narrow exceptions applies here. *Fence Creek*, 602 F.3d at 1131. For the reasons set forth below, Autotel has failed to carry its burden.

Before turning to the four exceptions listed above, the Court addresses BLM's argument that Autotel failed to meet two "preconditions" to supplementation. (Dkt. No. 18 at 4.) BLM first contends that the Court cannot admit the proposed supplements because Autotel did not submit them with its motion for supplementation. To this Court's knowledge, the Ninth Circuit does not have such a "precondition" for admission of a record supplement. BLM cites a District of Oregon case in which the court stated that it "follow[s] the procedure of determining whether evidence falls within one of the exceptions when such evidence is submitted in support of substantive motions." *Or. Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1213, 1216 (D. Or. 2008). The District of Oregon cited two Ninth Circuit cases, but those two cases did not hold that a district court can admit record supplements only if those supplements are first submitted to the court; they merely affirmed the district courts' admission of supplements that were, in those cases, previously submitted to the district courts. That being said, whether submission of the

proposed supplements is a precondition to record supplementation is a moot issue because the Court denies Autotel's motion to supplement.

BLM's next "precondition" assertion is that Autotel has not shown that the record is inadequate. (Dkt. No. 18 at 5.) BLM cites the Ninth Circuit for the proposition that "supplementation of [the] AR [is] appropriate only when [the] agency's incomplete record "'effectively frustrates judicial review.'" (*Id.* (quoting *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988)).) *Hodel*, however, used this language to frame the discussion of when supplementation should be allowed, rather than to establish a separate standard. *See id.* The purpose of the four exceptions articulated in *Fence Creek* is to allow supplementation if the court's review of agency action would be effectively frustrated in the absence of the requested supplementation. The Court thus turns to those four exceptions.

Autotel argues directly under the first and second of the *Fence Creek* exceptions and impliedly under the fourth exception. Concerning the first exception, Autotel asserts that the requested supplements are necessary to determine if BLM considered all relevant factors and explained its decision. (Dkt. No. 17 at 6–8.) Autotel does not explain why the supplements are necessary, but implies that this Court cannot properly assess BLM's alleged failure to treat Autotel the same as the other site users without comparing the other site users' files with Autotel's file as currently included in the Administrative Record. (*See id.* at 5.) The Court also understands Autotel's argument to be that the Court cannot determine whether BLM explained its decision—particularly, its decision to deny a permit to Autotel after having granted permits to other site users in allegedly similar situations—without reference to the supplements.

BLM's actions were arbitrary and capricious if it treated Autotel differently than other similarly-situated parties without a rational justification. "A fundamental norm of administrative procedure requires an agency to treat like cases alike. If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Westar Energy, Inc. v. Fed. Energy Regulatory Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) (citing *Colo. Interstate Gas Co. v. FERC*, 850 F.2d 769, 774

6

(D.C.Cir.1988) ("[T]he Commission's dissimilar treatment of evidently identical cases . . . seems the quintessence of arbitrariness and caprice.")).

Autotel, however, has failed to carry its burden of explaining why BLM should have considered the information contained in the other site users' files. Autotel does not explain how it was similarly-situated to the other site users such that BLM's denial of Autotel's application amounted to impermissibly dissimilar treatment. Although BLM granted Metro's 2000 permit and Frontier's 2007 permit after the Project Site was designated an ISA—placing Autotel, Metro, and Frontier under the same land use regime—Autotel has not sufficiently explained how the Project was so similar to Metro's and Frontier's projects to warrant the same result (issuance of a development permit).

Similarly, Autotel's request is overbroad. It requests the "files for the other site users (Metro, Frontier, and Crown)." These files likely would be immense, as Metro, Frontier, and Crown have had communications facilities at Sunrise Mountain for at least 30 years. Autotel has not explained which part(s) of the other site users' operations and interactions with BLM were similar to Autotel's experience such that the other site users' files are relevant here. It appears that BLM's approval of Frontier's new guyed tower in 2007 *may* be relevant, as well as BLM's approval in 2007 of Metro's new building and six new metropole towers. But Autotel's motion does not so assert, and the Court will not speculate as to whether and how the other site users may or may not have been similarly situated to Autotel such that BLM's denial of Autotel's permit application may have been arbitrary or capricious.[4]

In addition, Autotel did not submit the other site users' files in the proceedings below, either to BLM or the IBLA. Indeed, the IBLA notes in its decision that "[a]lthough Autotel argues that it applied for the same kinds of improvements authorized for others, it has not provided any evidence in the record to support its position." (AR 6.) Without this information, neither BLM nor the IBLA was in a position to explain whether or how Autotel was treated any

---

[4] Notably, Autotel did not file a reply brief in which it could have explained precisely which parts of the other site users' files it seeks, in order to supplement to the Administrative Record.

7

differently than the other site users. This Court does not need the proposed supplements to determine if BLM properly explained its decision because, as a matter of logic, BLM's explanation cannot be defective for failing to explain matters about which it was presented no information. In short, Autotel has not shown that supplementation is warranted under the first exception because it has not met its heavy burden of articulating how the information in the proposed supplements were relevant factors or how BLM failed to explain its decision.

As to the second exception, Autotel argues that the other site users' files were "before" the BLM because they are internal BLM files that predated Autotel's application. (Dkt. No. 17.) Autotel implies that BLM "skewed" the record by excluding the other users' files, which BLM possessed and which Autotel contends were of "'great pertinence.'" (*Id.* at 6 (quoting *Blum*, 458 F. Supp. at 661).) Autotel's argument fails, however, because there is no indication that BLM used the other site users' files in making its decision, and those files were available to Autotel (either directly or through a Freedom of Information Act request). *See Roosevelt Conservation P'ship*, 616 F.3d at 497. Moreover, this exception only applies if BLM *relied* on information in the other users' files in making its decision. *Fence Creek*, 602 F.3d at 1131. That BLM possessed the other users' files does not amount to a showing that it *relied* upon them.

Finally, the holding in *Fence Creek* cuts strongly against Autotel's argument. There, the Forest Service revoked a cattle rancher's grazing permit. The rancher later sought to augment the administrative record with files about 25 other grazing permits that were not cancelled despite being deficient. The district court denied the rancher's request "because it found the administrative record was complete and that Fence Creek did not make an adequate showing of necessity or explain its failure to supplement the record before the agency," and the Ninth Circuit affirmed. *Id.* The files at issue were internal Forest Service files, yet the Ninth Circuit nonetheless affirmed the district court's denial of the rancher's motion to supplement. *Id.*

As to the fourth exception, the Court interprets Autotel's contention that it was treated differently than the other site users as an argument that BLM acted in bad faith. *See id.* Autotel's

argument fails because it "has not shown that review" of the other users' files "would demonstrate that [BLM] acted in bad faith in this specific case." *Id.*

In sum, Autotel "has not met its heavy burden to show that the additional materials sought are necessary to adequately review [BLM's] decision here." *Id.* The record currently before the Court is "sufficient to conduct the necessary review under the APA." *Id.*

## III. CONCLUSION

Autotel has failed to carry its burden of showing that the Administrative Record should be supplemented under one of the four exceptions articulated in *Fence Creek*. Accordingly, the Court DENIES the Motion (Dkt. No. 17).

DATED this 7th day of October, 2013.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE