UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AUTOTEL,<br><br>             Plaintiff,<br><br>   v.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>             Defendant. | Case No. 2:12-cv-00164-RFB-VCF<br><br>**<u>ORDER</u>** |

**I.     INTRODUCTION**

This matter is before the Court on Motions for Summary Judgment filed by Plaintiff Autotel and by Defendant Bureau of Land Management (BLM). ECF No. 23, 27. In this case, Autotel seeks judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, of the BLM's denial of its application to build a communications tower on Sunrise Mountain.[1] After consideration of the original and supplemental administrative records and the parties' respective arguments, the Court affirms the BLM's decision. Therefore, Autotel's Motion for Summary Judgment is denied and the BLM's Motion for Summary Judgment is granted.

**II.    BACKGROUND**

Autotel commenced this action on February 1, 2012, following the BLM's rejection in January 2007 of its application to build a tower on Sunrise Mountain and the February 2008 decision of the Interior Board of Land Appeals (IBLA) affirming the BLM's denial. Admin. Record 24-26, 3-7 ("AR"). The following facts are taken from the Administrative Record.

---

[1] Sunrise Mountain, also known as Frenchman Mountain, is located on land owned by the BLM near Las Vegas, Nevada.

### A. Overview

The Federal Land Policy and Management Act of 1976 (FLPMA) directs the Secretary of the Interior to study "those roadless areas of five thousand acres or more" identified as having wilderness characteristics as described in the Wilderness Act, 16 U.S.C. § 1101 *et seq.*, and to make recommendations "as to the suitability or nonsuitability of each such area . . . for preservation as wilderness." 43 U.S.C. § 1782(a); AR 33-34. Until Congress acts on such recommendations, "the Secretary shall continue to manage such lands according to his authority under [the FLPMA] . . . in a manner so as not to impair the suitability of such areas for preservation of wilderness." Id. § 1782(c); AR 34. Lands subject to wilderness review, including the area of Sunrise Mountain on which Autotel proposed to build a tower, are known as "Instant Study Areas" (ISAs).[2] AR 3.

The BLM, under the direction of the Secretary, has implemented the FLPMA's mandate by adopting an Interim Management Policy for Lands Under Wilderness Review ("Policy"). AR 31-32. The Policy establishes guidelines for allowing or prohibiting particular uses of land (known as rights of way) in ISAs, including Sunrise Mountain. AR 4-6. Generally, under the Policy, rights of way that existed prior to the enactment of the FLPMA and adoption of the Policy "may be renewed if they are still being used for their authorized purpose." AR 31. Holders of existing rights of way may perform "[n]ecessary and routine maintenance" to keep their facilities "in a safe and reliable condition." Id. New rights of way, however, may only be approved if they are temporary and nonimpairing. AR 31.

"For a use or facility to be nonimpairing, it must be temporary, must not create surface disturbance, and must be easily and immediately terminated upon wilderness designation." AR 25.[3] The term "temporary" includes uses that are intended to last until the land is designated as

---

[2] The Court recognizes that Congress removed Sunrise Mountain from the list of lands under wilderness review pursuant to the FLPMA on January 17, 2014. Consol. Appropriations Act, 2014, Pub. L. 113-76, 128 Stat. 5, Div. G. However, as Sunrise Mountain was designated an ISA at all times relevant to this case, the Court finds that this recent change in status does not render this case moot. The Court will therefore decide whether the BLM acted arbitrarily and capriciously under the law in effect at the time it took final agency action.

[3] While these specific criteria as they appear in the Policy are not in the Administrative Record, they were described in the BLM's written decision denying Autotel's application and the

- 2 -

wilderness. AR 6. "Surface disturbance includes any new disruption to soil or vegetation. Uses and facilities necessitating reclamation (for example, recontouring topography, replacement of topsoil, or restoration of plant cover) are surface disturbing." AR 25. Finally, in order for the use to be "easily and immediately terminated," it cannot require the use of motor vehicles, motorized equipment, or the landing of aircraft, which are prohibited by the Wilderness Act. AR 25.

### B. The BLM's 2007 Decision

On April 4, 2003, Autotel filed an application with the BLM seeking to obtain a 30-year right of way on Sunrise Mountain. AR 68-79. On July 10, 2003, the BLM returned Autotel's application and accompanying fee and stated that it would not process the application in light of the proposed site's location within the Sunrise Instant Study Area and within the Rainbow Gardens Area of Critical Environmental Concern (ACEC).[4] AR 55. Autotel resubmitted its application on August 14, 2003, noting that it had amended the application "so that all the proposed improvements will be located in the area of existing surface disturbance." AR 51-52.

Autotel's proposed construction consisted of a 12-by-20 foot metal building, a tower standing 80 feet high, a generator, and a propane tank. AR 68. The application stated that Autotel's tower would require the excavation of approximately 16 cubic yards of rock. AR 69. The building would sit on a concrete slab and the construction would be done with the aid of a helicopter. AR 70. Autotel proposed to build in a previously excavated area approximately 30 feet north of an existing building. Id.

The BLM rejected Autotel's proposal in a written decision dated January 12, 2007. AR 24-26. In its decision, BLM stated that it denied Autotel's application because the proposed facility was within the Sunrise Mountain ISA and did not satisfy the nonimpairment criteria

---

IBLA's decision affirming the BLM. Autotel does not dispute the BLM's or the IBLA's summary of the criteria. Further, the nonimpairment criteria are fully set out in an exhibit to the BLM's Motion for Summary Judgment, which Autotel does not dispute. Interim Mgmt. Policy at 9-18, Def.'s Mot. Summ. J. Ex. A. Therefore, the Court finds that the nonimpairment criteria are accurately described in the BLM and IBLA decisions.

[4] Although the proposed site's location within the Rainbow Gardens ACEC was a reason given for the denial of Autotel's application, the Administrative Record does not contain any materials explaining specifically how this designation impacted Autotel's proposal. Thus, the Court does not examine whether the BLM's denial was independently justified by Sunrise Mountain's inclusion within the ACEC.

1 outlined in the Policy. AR 24-25. First, the BLM determined that Autotel's facility was not
2 temporary. The BLM stated that "[t]he proposed facility is intended to accommodate a use that is
3 long term and only made temporary by the caveat that it could be removed if and at the time the
4 area were designated as wilderness." AR 25. Second, the BLM found that the proposed tower
5 would not be easily and immediately terminated upon wilderness designation because if the
6 Sunrise ISA were designated as wilderness, the Wilderness Act would prohibit the use of
7 motorized vehicles and aircraft to break up and transport the building materials. Id. Finally, the
8 BLM determined that the tower foundation, leveling of the site, and setting of a concrete pad
9 would create surface disturbance: these activities would "create new disruption to the soil, and
10 likely the removal of vegetation. In each case, the removal of the facility would necessitate
11 reclamation." AR 25.

### C. The IBLA's 2008 Decision

13 Autotel appealed the BLM's decision to the IBLA on February 5, 2007. AR 23. Autotel
14 appealed the BLM's decision to the IBLA on three grounds. First, Autotel argued that the BLM
15 erred in finding Autotel's proposed use to not be temporary. AR 19. Autotel claimed that its
16 proposed tower was temporary because Autotel had acknowledged in a letter to the BLM that its
17 right of way would terminate and the tower would be removed if the Sunrise ISA were
18 designated as wilderness. Id. Second, Autotel argued that the Policy did not contain a
19 requirement that facilities be "easily and immediately terminated." Id. Third, Autotel contended
20 that the BLM's finding that the tower would create new surface disturbance was incorrect
21 because Autotel proposed to build the tower on already-disturbed earth, and thus reclamation
22 was already required. Id.

23 The IBLA issued its decision on February 1, 2008. AR 3-7. The IBLA affirmed the
24 BLM's decision, finding that Autotel had not met its burden of showing that the BLM committed
25 a material factual error, failed to consider all relevant factors, or failed to provide a rational basis
26 for its decision. AR 6. The IBLA did find that Autotel was correct that the BLM erroneously
27 interpreted the term "temporary" in the Policy. Id. However, the IBLA agreed with the BLM that
28 Autotel's tower would require the use of motorized vehicles and heavy equipment to remove and

therefore would not be "easily and immediately terminated." Id. The IBLA also found that Autotel had not carried its burden of showing that its use would not create new surface disturbance, as required by the Policy. Id. Autotel then filed its petition for judicial review to this Court on February 1, 2012. ECF No. 1.

### D. Supplementation of the Administrative Record

The BLM filed the Administrative Record with the Court on June 19, 2012. ECF No. 12. On January 2, 2013, Autotel moved to supplement the AR with the records of certain other Sunrise Mountain right of way holders, whom it identified as "Metro," "Crown," and "Frontier." Id. Autotel argued that these users were similarly situated to Autotel and that the BLM had permitted them to construct towers and facilities on Sunrise Mountain, and thus their files were necessary to the Court's decision on whether the BLM acted arbitrarily and capriciously. ECF No. 17. The Court denied Autotel's motion on October 7, 2013. Order, ECF No. 20. However, on March 31, 2015, the Court reconsidered that order and found that these files were in fact necessary to a determination of (1) whether the users identified by Autotel were in fact similarly situated to Autotel and, if so, (2) whether the BLM treated those users similarly to Autotel. Order, ECF No. 46.

The BLM filed the Supplemental Administrative Record ("SAR") with the Court on April 23, 2015. ECF No. 54. The SAR consisted of all documents in the BLM's possession relating to the Metro, Crown, and Frontier communication facilities located at Sunrise Mountain from the time it was designated as an ISA to the present. The parties were then permitted to supplement their Motions for Summary Judgment with facts or arguments derived from the SAR. The Court held oral argument on the parties' motions on August 17, 2015, after which it took the motions under submission. ECF No. 61. This Order follows.

### III. LEGAL STANDARD

Section 706(2) of the APA provides, as relevant here, that an agency action must be upheld on review unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard of review, the agency must

- 5 -

1  "examine the relevant data and articulate a satisfactory explanation for its action." F.C.C. v. Fox
2  Television Stations, Inc., 556 U.S. 502, 513 (2009) (quoting Motor Vehicle Mfrs. Assn. of
3  United States, Inc. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983)). "The scope
4  of . . . review under this standard is narrow," and "a court is not to substitute its judgment for that
5  of the agency." Judulang v. Holder, 132 S.Ct. 476, 483 (2011) (citations and internal quotation
6  marks omitted).

7  Under the arbitrary and capricious standard of review, "[a]gency action is valid if a
8  reasonable basis exists for [the agency's] decision. A reasonable basis exists where the agency
9  considered the relevant factors and articulated a rational connection between the facts found and
10 the choices made." Arrington v. Daniels, 516 F.3d 1106, 1112 (9th Cir. 2008) (citation and
11 internal quotation marks omitted). However, "courts retain a role, and an important one, in
12 ensuring that agencies have engaged in reasoned decisionmaking. . . . That task involves
13 examining the reasons for agency decisions—or, as the case may be, the absence of such
14 reasons." Judulang, 132 S.Ct. at 483-84 (citations omitted).

15 Agency action may also be arbitrary if it treats similarly situated individuals differently
16 without adhering to established guidelines or factors. Id. at 486 (finding to be arbitrary the Board
17 of Immigration Appeals' application of its comparable-grounds policy to noncitizens seeking
18 relief under former Section 212(c) of the Immigration and Nationality Act, in part because
19 "everything hangs on the fortuity of an individual official's decision. An alien appearing before
20 one official may suffer deportation; an identically situated alien appearing before another may
21 gain the right to stay in this country."); see also Mem'l Rehab. Hosp. v. Sec'y of Health &
22 Human Servs., 65 F.3d 134, 138 (9th Cir. 1995); Westar Energy, Inc. v. Fed. Energy Regulatory
23 Comm'n, 473 F.3d 1239, 1241 (D.C. Cir. 2007) ("A fundamental norm of administrative
24 procedure requires an agency to treat like cases alike. If the agency makes an exception in one
25 case, then it must either make an exception in a similar case or point to a relevant distinction
26 between the two cases.") (citations omitted).

27 Finally, in order to be subject to judicial review under the APA, an agency action must be
28 either reviewable by statute or considered a "final agency action for which there is no other

adequate remedy in a court." 5 U.S.C. § 704. Here, the parties do not dispute that the IBLA's decision affirming the BLM's denial of Autotel's application was a final agency action.

## IV.    DISCUSSION

Autotel's central argument at summary judgment is that the BLM acted arbitrarily and capriciously by treating Autotel differently from other applicants who have been granted rights of way and have built towers on Sunrise Mountain. These users are identified in the SAR as the Las Vegas Metropolitan Police Department ("Metro"), Crown Communications ("Crown"), and Frontier Radio, Inc. ("Frontier"). SAR 0, 449, 1305. After reviewing the AR, SAR, and the parties' arguments made in their briefs and at the August 17, 2015 hearing, the Court concludes that the BLM's decision was not arbitrary or capricious. To the extent that Metro, Crown, and Frontier were similarly situated to Autotel, the BLM did not treat these users differently from Autotel. The Court also concludes that the BLM's decision on Autotel's application itself was not arbitrary or capricious. Thus, the Court grants summary judgment in favor of the BLM and against Autotel.

### A.  The BLM's Treatment of Metro, Crown, and Frontier

The Court has reviewed the BLM's decisions on various applications filed by Metro, Crown, and Frontier contained within the SAR. Based upon this review, the Court concludes that there were few instances in which these users could be considered similarly situated to Autotel, and in those instances, the BLM did not treat them differently from Autotel.

The Court finds that Metro, Crown, and Frontier were not similarly situated to Autotel before 1995, when the version of the Policy that governed Autotel's application was adopted.[5] Metro's right of way was granted in 1970, Frontier's right of way was granted in 1976, and Crown's right of way was granted in 1984. SAR 0, 1300, 449. The BLM adopted a new version

---

[5] Defs.' Mot. Summ. J. Ex. A. Autotel does not dispute that the Policy is a reasonable and authoritative interpretation of the FLPMA or that compliance with the IMP constitutes compliance with the FLPMA. The Court therefore assumes for the purposes of this case, without deciding, that the Policy was a reasonable and authoritative interpretation of the FLPMA at the time of Autotel's application. See Montana Wilderness Ass'n v. Connell, 725 F.3d 988, 995 n.4 (9th Cir. 2013).

1  of its Interim Management Policy on July 5, 1995, which replaced its previous policy first
2  adopted in 1987. Defs.' Mot. Summ. J. Ex. A. Thus, the BLM granted the rights of way of
3  Metro, Crown, and Frontier before either the 1987 or 1995 Policies were in effect. The Court has
4  no documents before it indicating that the nonimpairment criteria were even in effect at all when
5  these users were granted their rights of way, nor does it have any information as to how the
6  nonimpairment criteria may have changed from 1987 to 1995. Moreover, Autotel has not
7  provided or requested this information. Thus, the Court cannot conclude that Metro, Crown, or
8  Frontier were similarly situated to Autotel prior to 1995.

9  To the extent Metro, Crown, and Frontier were similarly situated to Autotel after the
10 adoption of the Policy in 1995, the Court finds that they were not treated differently from
11 Autotel. In its briefs, Autotel identifies a list of instances in which it argues the BLM allowed
12 additional activity on Sunrise Mountain by these existing users. Autotel argues that each of these
13 activities constitutes dissimilar treatment of similarly situated users. However, based upon the
14 Court's review, the Supplemental Administrative Record only contains four instances in which
15 additional construction or activity took place that could potentially support Autotel's claims, and
16 in each instance the BLM consistently applied the nonimpairment criteria in the Policy.

17 First, Autotel argues that the BLM's decision to allow Metro to sublet their right of way
18 in 1996 is evidence of dissimilar treatment. The Court does not agree. The SAR shows that on
19 October 29, 1996, the BLM granted Metro's application "to amend their right-of-way grant to
20 allow subleasing to telecommunication users and to serve as site facility manager." SAR 275.
21 Although the subleasing conditions appear to contemplate the possibility of construction by
22 subtenants, any such plans must first be approved by the BLM. SAR 277. This grant of
23 subleasing authority is consistent with the Policy, which allows existing rights of way to "be
24 renewed if they are still being used for their authorized purpose" and permits "any additional
25 actions authorized in the original permit . . . ." AR 31. Autotel's application, by contrast, was
26 governed by the criteria for new rights of way set forth in the Policy. Therefore, Autotel's
27 application for a new right of way was not similarly situated to Metro's application to permit
28 subleasing on its existing right of way.

1        Second, Autotel points to Crown's application and construction in 2000 and 2001 of six
2   additional 35-foot pipes to relocate antennas that were located on its existing tower. SAR 1034.
3   The SAR reveals that the BLM never authorized the construction of these additional pipes. The
4   BLM sent a letter to Crown on July 18, 2001 informing Crown that it had constructed the pipes
5   without BLM's approval and demanding an explanation of why six poles were needed instead of
6   one. SAR 1050. Crown responded on August 29, 2001, stating that the poles were added to
7   "mitigate environmental impacts" and because of space restrictions. Crown also stated that the
8   Project Manager for the site left the company and the new manager unknowingly commenced
9   construction without the BLM's permission. SAR 1025. The SAR does not indicate that the
10  BLM ever responded to this communication or that it ever authorized the construction.

11       While Autotel argues that this construction of six additional poles by Crown constitutes
12  evidence of dissimilar treatment by the BLM, the Court again disagrees. The record does not
13  contain any suggestion that the BLM ever consented to the construction of these poles. Further,
14  the BLM's decision not to require Crown to remove the poles is consistent with its mandate
15  under the FLPMA to preserve the character of Sunrise Mountain for preservation as wilderness
16  and to not allow any activity that would create surface disturbance. Once the poles were
17  constructed (without the BLM's permission), the BLM may have rationally concluded that
18  allowing the poles to remain on the land was less intrusive than requiring their removal.
19  However, the Court need not decide the appropriateness or not of the BLM's response to this
20  unauthorized construction by Crown.  The Court simply notes that the BLM did not give
21  permission to Crown to construct these poles.  Thus, this sequence of events is quite distinct
22  from the BLM's decision to deny Autotel's proposal for a new right of way to build an entirely
23  new tower. The Court therefore determines that this activity does not amount to dissimilar
24  treatment of similarly situated applicants.

25       Third, Autotel cites an instance in September 2001 in which the BLM authorized Crown
26  to install new radio cabinets in its existing building, install six new panel antennas on its existing
27  monopole, and perform necessary electrical service. SAR 1021. This activity consists of routine
28  maintenance and upgrades to existing facilities—actions permitted under the Policy for existing

1  right of way holders—and does not appear to have created new surface disturbance. The Court
2  thus concludes that this activity is not similar to Autotel's proposed construction.

3  Finally, Autotel argues that the BLM treated Metro differently when it permitted Metro to
4  build a new tower in 2008. The SAR indicates that Metro's original 70-foot tower collapsed on
5  May 28, 2008. SAR 60. On May 30, 2008, the BLM gave Metro permission to remove the
6  damaged tower and antennas "and replace [them] with same size tower within the same footprint
7  as consistent with existing authorization." SAR 63. The Court finds that this authorization is not
8  evidence of dissimilar treatment by the BLM. Metro, an existing right of way holder, was given
9  permission to replace a tower that already existed on Sunrise Mountain and had collapsed. The
10 BLM's action is consistent with the Policy, which states that holders of existing rights of way
11 may perform "necessary and routine maintenance" to keep their facilities "in a safe and reliable
12 condition." AR 31. Although Autotel argues that Metro was actually permitted to construct a
13 new tower with a wider base in place of the old tower, the Court has not found any evidence in
14 the SAR—and Autotel was not able to identify any evidence at oral argument—that such a tower
15 was in fact constructed. However, even if a tower with a wider base was constructed, the Court
16 finds that this decision could nonetheless be a rational application of the Policy if it did not
17 violate the nonimpairment criteria and was necessary to keep the facility in a safe and reliable
18 condition.

19 In sum, Autotel has not identified any instance in which a similarly situated applicant was
20 treated differently from it without a relevant distinction. The activities and construction proposed
21 by Metro and Crown and authorized by the BLM were not similar to the construction proposed
22 by Autotel because they were either for purposes of maintenance and safety or did not involve
23 surface disturbance. The only new construction that resulted in an expansion of facilities was
24 done by Crown in 2001, which appears to have been done without the BLM's permission. And in
25 the remaining instances in the SAR in which Metro, Frontier, or Crown applied to expand their
26 new facilities, the BLM rejected these proposals and explained that the proposed construction
27 would violate the nonimpairment criteria of the Policy. See, e.g., SAR 298 (denial of a 1996
28 application by Metro to permit subleasing); SAR 100-02 (denial of Nevada Power Company's

1    2007 application to remove Metro's existing towers and replace with a 100-foot tower).

2    **B.  Whether the BLM's Decision Was Arbitrary or Capricious**

3    Turning to Autotel's application, the Court concludes that the BLM's decision was not arbitrary or capricious. In its 2007 decision, the BLM found that Autotel's proposed tower would violate the nonimpairment criteria because it was not temporary, it could not be easily and immediately removed upon designation of Sunrise Mountain as wilderness, and it would create surface disturbance. The Court agrees with the IBLA that the BLM erroneously interpreted the term "temporary" and that Autotel's proposed facility was likely temporary within the meaning of the Policy because Autotel intended for it to remain only until the land was designated as wilderness. Nevertheless, the record shows that the BLM had a rational basis for denying Autotel's application based on its findings that the facility would not be easily and immediately terminated and that it would create surface disturbance.

The BLM analyzed Autotel's proposal under the nonimpairment criteria applicable to new rights of way and found that removal of the planned facility would require the use of helicopters and motorized equipment. This finding was supported in the record by a rational basis, as Autotel's application specifically stated that its facility would be removed using the same means by which it was constructed (i.e., with the aid of a helicopter and four-wheel-drive vehicles). The BLM further found that the facility would necessitate reclamation because the acts of leveling the site and setting a concrete pad would likely disrupt the soil and require the removal of vegetation. Although Autotel argues that it proposed to build its facility in a previously excavated area, it is not the Court's role to second-guess the agency's judgment where it engaged in reasoned decisionmaking. The BLM's Policy, the validity of which Autotel does not dispute, defines surface disturbance as "*any* new disruption to soil or vegetation." AR 25 (emphasis added). The BLM therefore had a rational basis for its finding that Autotel's facility would violate the requirement that new rights of way not create surface disturbance. Therefore, the Court finds that the BLM considered the relevant factors and stated a rational basis for its conclusions, and its decision was not arbitrary or capricious.

. . .

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Autotel's Motion for Summary Judgment (ECF No. 23) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Bureau of Land Management's Motion for Summary Judgment (ECF No. 27) is GRANTED. The Clerk of Court is instructed to enter judgment in favor of Defendant and close this case.

DATED: September 28, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**